Bobby Saadian, SBN 250377
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
bobby@wilshirelawfirm.com

J. Paul Gignac, SBN 125676
**JPG LAW APC**
15 W. Carrillo Street, Suite 246
Santa Barbara, California 93101
Telephone: (805) 683-7400
Facsimile: (805) 962-0722
jpaulgignac@jpg-law.com

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

| | |
|---|---|
| DANA PICA and GABRIELLA GROFF, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>DELTA AIR LINES, INC., a Delaware corporation; [24]7.AI, INC., a California corporation; and DOES 1 to 10, inclusive,<br><br>　　　　　　Defendants. | Case No.: 2:18-cv-02876-MWF-E<br><br>**CLASS ACTION**<br><br>Assigned to the Honorable Michael W. Fitzgerald<br><br>**SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Dana Pica and Gabriella Groff ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action based upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigations of their attorneys.

## I.    OVERVIEW

1.    In April, 2018, Delta Airlines, Inc. ("Delta") announced that its chat service company had suffered a malware attack beginning on or about September 26, 2017 and continuing through or about October 12, 2017 ("Subject Timeframe"). Hundreds of thousands of customers of Delta whose personal identifiable information was improperly transmitted to Delta's chat service company had their private identifiable information stolen and have been placed at an imminent, immediate, and continuing risk of identity theft-related harm.

2.    Plaintiffs, individually and on behalf of all similarly situated persons (hereafter, "Class Members"), bring this class action to secure redress against Delta and its chat service company, [24]7.AI, Inc. ("[24]7"), for their reckless and negligent violation of customer privacy rights.  Plaintiffs are customers of Delta who made reservations for flights and/or other travel services with Delta and whose private identifiable information was transmitted by Delta to [24]7 without their authorization during the Subject Timeframe and therefore exposed during the [24]7 security breach that took place.

3.    The [24]7 security breach compromised customers' full names, credit and debit card account numbers, card expiration dates, card verification codes, email addresses, phone numbers, mailing addresses, and other information ("PII").

4.    As a result of defendants' wrongful actions and inactions, customer information was transmitted to unauthorized individuals.  Many of the customers who purchased tickets or other related services with Delta have had their PII compromised, have had their privacy rights violated, have been exposed to the risk of fraud and identify theft, and have otherwise suffered damages.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

## II.     THE PARTIES

5.     <u>Plaintiff Dana Pica</u> is a California citizen residing in Laguna Niguel, California.  Plaintiff is a customer of Delta who gave her PII to defendants while making a Delta airline ticket purchase during the Subject Timeframe.  Plaintiff is informed and believes that, shortly after the [24]7 data breach, Plaintiff's debit and credit card information was accessed by hackers. In addition, Plaintiff has to purchase credit and personal identity monitoring service to alert her to potential misappropriation of her identity and to combat risk of further identity theft.  At a minimum, therefore, Plaintiff has suffered compensable damages because she will be forced to incur the cost of a monitoring service, which is a reasonable and necessary prophylactic step to prevent and mitigate future loss.   Exposure of Plaintiff's PII as a result of the [24]7 data breach has placed her at imminent, immediate and continuing risk of further identity theft-related harm.

6.     <u>Plaintiff Gabrielle Groff</u> is a California citizen residing in Culver City, California. Plaintiff is a customer of Delta who gave her PII to defendants while making a Delta airline ticket purchase during the Subject Timeframe.  Plaintiff is informed and believes that, shortly after the [24]7 data breach, Plaintiff's debit and credit card information was accessed by hackers. In addition, Plaintiff has to purchase credit and personal identity monitoring service to alert her to potential misappropriation of her identity and to combat risk of further identity theft.  At a minimum, therefore, Plaintiff has suffered compensable damages because she will be forced to incur the cost of a monitoring service, which is a reasonable and necessary prophylactic step to prevent and mitigate future loss. Exposure of Plaintiff's PII as a result of the [24]7 data breach has placed her at imminent, immediate and continuing risk of further identity theft-related harm.

7.     As used herein, "Plaintiffs" shall refer to Dana Pica and Gabriella Groff, together.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

8.    <u>Defendant Delta Air Lines, Inc</u>. is a Delaware corporation with its principal place of business located at 1030 Delta Boulevard, Atlanta, Georgia 30320.  Delta provides online travel reservation and related services to consumers and local partners both through its website and through mobile applications and also provides air transportation to consumers.  Delta maintains a hub at the Los Angeles International Airport.

9.    <u>Defendant [24]7.AI, Inc</u>. is a California corporation that provides "chat services" for Delta and other companies. [24]7's principal place of business and corporate headquarters are located in San Jose, California.  [24]7 offers voice and chat agent services for sales and support.  Delta used [24]7 for such services during the Subject Timeframe.

10.    Plaintiffs are unaware of the true names, identities, and capacities of the defendants sued herein as DOES 1 to 10.  Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of DOES 1 to 10 if and when ascertained.  Plaintiffs are informed and believe, and thereupon allege, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings alleged herein and that each of the defendants sued herein as a DOE proximately caused injuries and damages to Plaintiffs as set forth below.

11.    As used herein, "Defendants" shall refer to Delta, [24]7, and Does 1 to 10, collectively.

## III.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over the state law claims alleged in this Second Amended Complaint pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2)(A) because: (a) the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs; and (b) all of the class members are citizens of a state (California) that is different from the state of citizenship of Delta (Delaware).

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

13.    The Court has personal jurisdiction over Defendants because Plaintiffs' claims arise out Defendants' business activities conducted in the State of California.

14.    Venue is appropriate is appropriate in this District because, among other things: (a) Plaintiffs are residents of this District and citizens of the State of California; (b) Defendants directed their business activities at residents in this District; and (c) many of the acts and omissions that give rise to the claims for relief alleged in this action took place in this judicial District.

15.    Venue is further appropriate in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct a significant amount of business in this District and because Defendants have substantial contacts in this District.

## IV.    FACTUAL ALLEGATIONS

### A.  The [24]7 Data Breach.

16.    On or about April 6, 2018, Delta sent a notice to debit and credit card users stating that Delta's chat service company was hacked by malware and that any transactions made during the Subject Timeframe may have been affected.

17.    On April 11, 2018, Phyllis B. Summer, a Partner of King & Spalding as well as the firm's Chief Privacy Officer, wrote on behalf of Delta stating that "a cyber security incident involving **[24]7.ai, a third-party vendor of chat services** for Delta and many other companies, that may have resulted in unauthorized access to [customers' PII] …." [emphasis added].[1]

18.    [24]7 is a chat service company with a focus in artificial intelligence technology.  During the Subject Timeframe, [24]7 collected, maintained, and stored Delta's customers' PII in its computer systems.  PII is highly sensitive and

---

[1] The Cyber Security Incident Affecting Delta Air Lines, Inc. is attached hereto as **Exhibit A**.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

susceptible to attacks.  [24]7 was or should have been reasonably aware that this sensitive PII could be used for wrongful purposes, such as identity theft and fraud.

### B. California Recognizes the Importance of PII

19.    Cal. Civ. Code §1798.81.5(a)(1) states that: "It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."

### C. PII Is Valuable to Hackers and Thieves.

20.    It is well known, and the subject of many media reports, that payment card data is highly coveted and a frequent target of hackers.  Especially in the technology industry, the issue of data security and threats thereto is well known. Despite well-publicized litigation and frequent public announcements of data breaches, Defendants maintained an insufficient and inadequate system to protect the payment information of Plaintiffs and Class Members.

21.    Legitimate organizations and members of the criminal underground alike recognize the value of PII.  Otherwise, they would not aggressively seek and pay for it.  As previously seen in one of the world's largest data breaches, hackers compromised the card holder data of 40 million of Target's customers. *See* "Target: 40 million credit cards compromised," CNN Money, Dec. 19, 2013, *available* at http://money.cnn.com/2013/12/18/news/companies/target-credit-card/,     attached hereto as **Exhibit B**.

22.    Credit and debit card information is highly valuable to hackers. Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. Credit and debit card information that is stolen from the point of sale is known as "dumps."  *See* Krebs on Security April 16, 2016, Blog Post, *available at* https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/, attached hereto as **Exhibit C**.  Credit and

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

6

debit card dumps can be sold in the cybercrime underground for a retail value of about "$20 apiece." *Id.* This information can also be used to clone a debit or credit card. *Id.*

### D. The Data Breach Has Resulted and Will Result in Additional Identity Theft and Identity Fraud

23.    Defendants failed to implement and maintain reasonable security procedures and practices appropriate to protect the PII of Plaintiffs and the Class Members.

24.    The ramifications of Defendants' failure to keep Plaintiffs' and Class Members' data secure is severe. According to Javelin Strategy and Research, "one in every three people who is notified of being a potential fraud victim becomes one . . . with 46% of consumers who had cards breached becoming fraud victims that same year." "Someone Became an Identity Theft Victim Every 2 Seconds Last Year," Fox Business, Feb. 5, 2014 *available* at http://www.foxbusiness.com/personal-finance/2014/02/05/someone-became-identitytheft-victim-every-2-seconds-last-year.html, attached hereto as **Exhibit D**.

25.    In the case of a data breach, simply reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems." *See* "Victims of Identity Theft," U.S. Department of Justice, Dec 2013, *available at* https://www.bjs.gov/content/pub/pdf/vit12.pdf, attached hereto as **Exhibit E**. In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id.* at 11.

26.    A person whose PII has been obtained and compromised may not see the full extent of identity theft or fraud for years. It may take some time for the victim to become aware of the theft. In addition, a victim may not become aware

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

### E. Annual Monetary Losses from Identity Theft are in the Billions of Dollars

27.     According to the BJS, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014. Among identity theft victims, existing bank or credit card accounts were the most common types of misused information. *Id*.

28.     Javelin Strategy and Research reports that losses from identity theft reached $21 billion in 2013. *See* 2013 Identity Fraud Report, attached hereto as **Exhibit F**. There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO, Report to Congressional Requesters, at 33 (June 2007), *available* at

*http://www.gao.gov/new.items/d07737.pdf*, attached hereto as **Exhibit G**.

29.     As a result of the data breach, Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and Class Members are also subject to a higher risk of phishing and pharming where hackers exploit information they already obtained in an effort to procure even more PII. Plaintiffs and Class Members are presently

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies.

### F. *Plaintiffs and Class Members Suffered Damages*

30.    The exposure of Plaintiffs' and Class Members' PII to unauthorized third-party hackers in the data breach resulted from three specific actions and/or inactions by Delta.  First, Delta required that Plaintiffs and Class Members provide their PII to Delta in order to book a flight with Delta.  Second, unbeknownst to Plaintiffs and Class Members, their PII was being shared and transmitted to [24]7 – an entity that was unknown to the vast majority of Class Members.  Third, Delta entrusted [24]7 with its customers' PII without ensuring that [24]7 had in place a reasonable and adequate system of security procedures and practices to protect the PII of Plaintiffs and Class Members from being compromised and exposed to third party hackers.  Therefore, the exposure of Plaintiffs' and Class Members' PII to unauthorized third party hackers was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiffs' and Class Members' PII from unauthorized access, use, and disclosure as well as Defendants' failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII in order to protect such PII against reasonably foreseeable threats to the security of such information.

31.    Plaintiffs' and Class Members' PII is private and sensitive in nature and was inadequately protected by Defendants.  Defendants did not obtain Plaintiffs' and Class Members' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards.

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

32.    As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting data breach, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

33.    Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.    The improper disclosure, compromising, and theft of their PII;

b.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of unauthorized third-party hackers and misused via the sale of Plaintiffs' and Class Members' information on the Internet black market;

c.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

d.    Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market; and

e.    Overpayments to Defendants for bookings and purchases during the Subject Timeframe in that implied in the price paid for such bookings by Plaintiffs and Class Members to Defendants was the promise that some amount of the charges would be applied to the costs of

10

implementing reasonable and adequate safeguards and security measures that would protect customers' PII, which Defendants did not implement and, as a result, Plaintiffs and Class Members did not receive what they paid for and were overcharged by Defendants.

### G. The Contract Between Delta and its Customers

34.    Prior to completing the booking of a flight with Delta, the following terms and conditions are shown to Delta's customers:

GENERAL CONDITIONS OF PURCHASE

You agree to accept all Fare Rules for each flight, all Trip Extras Terms & Conditions, and all terms in Delta's applicable Contract of Carriage. Once your ticket is purchased, Risk-Free Cancellation may apply. No contract exists until you receive confirmation that payment was received and processed.

View Fare Rules, Change & Cancellation Policies. This ticket is changeable/ nonrefundable . Fees may apply. Failure to appear for any flight without notice to Delta will result in cancellation of your remaining reservation.

*[This Portion Is Intentionally Left Blank]*

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.: 2:18-cv-02876-MWF-E

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

35.    Further, when attempting to book a flight with Delta online, the following is also shown:



36.    As shown above, the screen clearly states that "**Ticket purchase is subject to all terms in Delta's applicable Contract of Carriage**." [emphasis added].

*[This Portion Is Intentionally Left Blank]*

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.: 2:18-cv-02876-MWF-E

37.    In addition, when a flight is booked with Delta, the booking information (including the amount paid for the flight or reservation and time) is followed by the following information:

**Conditions of Carriage**

Air transportation on Delta and the Delta Connection® carriers is subject to Delta's conditions of carriage. They include terms governing for example:

• Limits on our liability for personal injury or death of passengers, and for loss, damage of delay of goods and baggage.
• Claim restrictions including time periods within which you must file a claim or bring action against us.
• Our right to change terms of the contract.
• Check-in requirements and other rules established when we may refuse carriage.
• Our rights and limits of our liability for delay or failure to perform service including schedule change, substitution of alternative air carriers or aircraft, and rerouting.
• Our policy on overbooking flights, and your rights if we deny you boarding due to an oversold flight.

These terms are incorporated by reference into our contract with you. You may view these conditions of carriage on delta.com, or by requesting a copy from Delta.

You have received this email because you elected to receive your Electronic Ticket receipt sent to you via email. If you would like to take advantage of other Delta email programs featuring special fares, promotions, information and flight updates, please visit: delta.com/emailprograms or delta.com/notifications.

This document establishes the creation of your electronic EMD(S) in our computer systems. It does not constitute a document of carriage. Where this document is issued for transportation or services other than passenger air transportation, specific terms and conditions may apply. These terms and conditions may be provided separately or may be obtained from the issuing agent.

**Copyright Information**

This email message and its contents are copyrighted and are proprietary products of Delta Air Lines, Inc. Any unauthorized use, reproduction, or transfer of this message or its contents, in any medium, is strictly prohibited.

This is a post only email (EMD+). Please do not respond to this message.

© 2018 Delta Air Lines, Inc. All rights reserved.

**Privacy Policy**

Your privacy is important to us. Please review our Privacy Policy.

[*This Portion Is Intentionally Left Blank*]

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Case No.: 2:18-cv-02876-MWF-E

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

38.   The Contract of Carriage, which is hyperlinked above and was in effect during the Subject Timeframe, stated as follows:[2]

**RULE 1:**     **General Provisions**

**A.**     **Contract of Carriage**
When you buy a ticket for travel on Delta, you enter into a contract of carriage with us.  The terms of your contract are set forth in:

- your Ticket
- these Conditions of Carriage
- our published fare rules and regulations, which may govern the calculation of the fare and other charges that apply to your itinerary.  If your ticket is priced by delta.com, a Delta agent, or a computer reservation system, these fare rules and regulations will be included in the calculation of the ticket price that we quote to you.

39.   As shown above, Delta acknowledges that "[w]hen you buy a ticket for travel on Delta, **you enter into a contract of carriage with us**." [emphasis added]. It further states that the terms of the contract of carriage are set forth in the Conditions of Carriage and Delta's published fare rules and regulations.

40.   In the contract of carriage's rules, the following provision is set forth under Rule 25:

**RULE 25:**     **PERSONAL DATA**

The passenger recognizes that personal data has been given to carrier for the purposes of making a reservation for carriage, obtaining ancillary services, facilitating immigration and entry requirements, and making available such data to government agencies. For these purposes, the passenger authorizes carrier to retain such data and to transmit it to its own offices, other carriers, or the providers of such services, in whatever country they may be located.

41.   The terms of the contract of carriage specify that Delta only has the authority to **"retain such [PII] data and to transmit it to its own offices, other carriers, or the providers of such services** …."  The terms of the contract of carriage do not authorize Delta to "transmit" Plaintiffs' and Class Members' PII to any third parties other than "other carriers" and "the providers of such services" specified in Rule 25 (*i.e.* only as needed to make a reservation for carriage, obtain ancillary services, facilitate immigration and entry requirements, and make data available to government agencies).

---

[2] The contract of carriage is attached hereto as **Exhibit H**.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137



42.    Chat service providers such as [24]7 are not included among the specifically defined "providers of such services" to which Delta is authorized to "transmit" Plaintiffs' and Class Members' PII. The terms of the contract of carriage also do not authorize Delta to share Plaintiffs' and Class Members' PII with chat service companies such as [24]7.

43.    By sharing Plaintiffs' and Class Members' PII with [24]7, Delta breached the contract of carriage with Plaintiffs and Class Members.  See diagram explaining aforementioned transmission below:



WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.: 2:18-cv-02876-MWF-E

44.    Delta voluntarily undertook the task of retaining Plaintiffs' and Class Members' PII and agreed to transmit it to only "its own offices, other carriers, or the providers of such services."  Chat service providers such as [24]7 are not listed among "the providers of such services" in the contract of carriage.  Therefore, Delta breached the contract of carriage – a contract that Delta voluntarily undertook and under which Delta imposed obligations on itself with respect to the use and distribution of Plaintiffs' and Class Members' PII.

45.    To further emphasize this voluntary commitment by Delta (*i.e.* to not share or transmit the PII of Plaintiffs and Class Members to anyone except as provided in the contract of carriage), Delta stated the following, in its April 11, 2018 letter regarding the data breach: [3]

- "At Delta, the security and confidentiality of customers' information is of critical importance and a responsibility the company takes very seriously."

- "Delta is committed to protecting your personal information."

- "[O]ut of an abundance of caution and as part of our commitment to the security of your information."

- "[Delta] remain[s] committed to ensuring the security and confidentiality of our customers' information."

### H. [24]7's Knowledge of the Breach and Its Failure to Alert

46.    Plaintiffs' and Class Members' PII was the subject of a data breach due to the security vulnerabilities introduced by [24]7's software and technology.

47.    [24]7 knew that Plaintiffs' and Class Members' PII had been exposed to hackers as early as October 12, 2017, when [24]7 claimed to have fixed the security issues involved in this case.

---

[3] See, **Exhibit A**.

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.: 2:18-cv-02876-MWF-E

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

# V.    CLASS ACTION ALLEGATIONS

48.    Plaintiffs bring this action on their own behalf and, pursuant to Federal Rules of Civil Procedure Rule 23(a), (b)(2), and (b)(3), on behalf of the following classes ("the Classes):

The <u>Delta Nationwide Class</u>, which is initially defined as follows:

> All persons who are residents of the United States and who booked an airline ticket through Delta's website or mobile application at any time during the period commencing on September 26, 2017 and concluding on October 12, 2017.

The <u>[24]7 Nationwide Class</u>, which is initially defined as follows:

> All persons who are residents of the United States and who used the [24]7.AI electronic chat service platform at any time during the period commencing on September 26, 2017 and concluding on October 12, 2017.

The <u>Delta California Class</u>, which is initially defined as follows:

> All persons who are residents of the State of California and who booked an airline ticket through Delta's website or mobile application at any time during the period commencing on September 26, 2017 and concluding on October 12, 2017.

The <u>[24]7 California Class</u>, which is initially defined as follows:

> All persons who are residents of the State of California and who used the [24]7.AI electronic chat service platform at any time during the period commencing on September 26, 2017 and concluding on October 12, 2017.

49.    Excluded from the Classes are: (a) Defendants, including any entity in which any of the Defendants has a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendants; (b) the officers, directors, and legal representatives of Defendants; and (c) the judge and the court personnel in this

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

case as well as any members of their immediate families.  Plaintiffs reserve the right to amend the definitions of the Classes if discovery, further investigation and/or rulings by the Court dictate that they should be modified.

50.    *Numerosity*. Fed. R. Civ. P. 23(a)(1). The members of the Classes are so numerous that the joinder of all members of the Classes in a single action is impractical. While the exact number of Class Members is unknown to Plaintiffs at this time, Defendants have acknowledged that customers' PII was stolen for a period of seventeen days.  Given the number of ticket reservations that are made with Delta on a daily basis, it stands to reason that the number of Class Members is at least in the thousands.   The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, such as reservation receipts and confirmations.

51.    *Commonality and Predominance*. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Delta, on the one hand, and Plaintiffs and Class Members, on the other hand, had an enforceable contract;

    b.    Whether Delta breached its contracts with Plaintiffs and Class Members by improperly sharing or transmitting the PII of Plaintiffs and Class Members to unauthorized entities such as [24]7;

    c.    Whether [24]7 owed a duty of care to Plaintiffs and Class Members with respect to the security of their personal information;

    d.    Whether Defendants took reasonable steps and measures to safeguard Plaintiffs' and Class Members' PII;

    e.    Whether [24]7 violated common and statutory law by failing to promptly notify Class Members that their PII had been compromised;

    f.    Which security procedures and which data-breach notification

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

procedures Defendants should be required to implement as part of any injunctive relief ordered by the Court;

g.    Whether [24]7's acts and omissions described herein give rise to a claim of negligence;

h.    Whether Defendants knew or should have known of the security breach prior to the disclosure;

i.    Whether Defendants had a duty to promptly notify Plaintiffs and Class Members that their PII was, or potentially could be, compromised;

j.    What security measures, if any, must be implemented by Defendants to comply with their obligations;

k.    What the nature of the relief should be, including equitable relief, to which Plaintiffs and the Class Members are entitled;

l.    Whether Defendants violated the Storage Communications Act, 18 U.S.C. §§ 2701 *et seq.*; and

m.    Whether Plaintiffs and the Class Members are entitled to damages and/or injunctive relief.

52.    *Typicality*. Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of each of the other Class Members, was misused, improperly disclosed, and/or improperly shared.

53.    *Adequacy of Representation*. Fed. R. Civ. P. 23(a)(4).  Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs' claims are typical of the claims of the other Class Members, and Plaintiffs have the same non-conflicting interests as the other Class Members.  Therefore, the interests of the Class Members will be fairly and adequately represented by Plaintiffs and their counsel.

54.    *Superiority of Class Action*. Fed. R. Civ. P. 23(b)(3). A class action is

19

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

superior to other available methods for the fair and efficient adjudication of this controversy. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims.  There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

55.    Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

### (Against Delta on Behalf of the Delta California Class)

56.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 55 above, as if set forth fully herein.

57.    Delta's contract of carriage is an agreement between Delta, on the one hand, and Plaintiffs and Class Members, on the other hand, who have made a booking with Delta and, in the process of doing so, provided their PII to Delta.

58.     The contract of carriage limits Delta's authority to transmit Plaintiffs' and Class Members' PII to third parties.  The terms of the contract of carriage do not authorize Delta to "transmit" Plaintiffs' and Class Members' PII to any third parties other than "other carriers" and "the providers of such services" specified in Rule 25 (*i.e.* only as needed to make a reservation for carriage, obtain ancillary services, facilitate immigration and entry requirements, and make data available to government agencies).

59.    Chat service providers such as [24]7 are not included among the specifically defined "providers of such services" to which Delta is authorized to "transmit" Plaintiffs' and Class Members' PII.  The terms of the contract of carriage also do not authorize Delta to share Plaintiffs' and Class Members' PII with chat service companies such as [24]7.

60.    In breach of the terms of the contract of carriage, Delta transmitted and/or shared the PII of Plaintiffs and Class Members with [24]7.

61.    Plaintiffs and Class Members fully performed their obligations under the contract of carriage with Delta.

62.    As a direct and proximate result of Delta's breach of the contract of carriage and the ensuing [24]7 data breach, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing risk of identity theft-related harm and are thereby entitled to recover compensatory damages in an amount according to proof at trial.

## SECOND CLAIM FOR RELIEF

### Violation of the Stored Communications Act ("SCA")

### 18 U.S.C. §§ 2701 *et seq.*

### (Against All Defendants on Behalf of

### the Delta Nationwide Class and the [24]7 Nationwide Class)

63.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 55 above, as if set forth fully herein.

64.    The Stored Communications Act ("SCA") allows a private right of action against anyone who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." See 18 U.S.C. § 2701(a); see also 18 U.S.C. § 2707(a) (cause of action).

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

65.    The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, et seq., defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C.§ 2510(12). The SCA incorporates this definition of "electronic communication."

66.    To create the information transferred to Delta's servers for booking purposes, such as name, payment card information, date of travel, and similar information (collectively, "Delta Content"), customers transmit writing, images, or other data via the Internet from their computers or mobile devices to Delta's servers. Delta Content, therefore, constitutes "electronic communication" for purposes of the SCA.

67.    The SCA distinguishes between two types of electronic storage. The first is defined as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof."  18 U.S.C. § 2510(17)(A).  The second type is defined as "any storage of such communication by an electronic communication for purposes of backup protection of such communication." 18 U.S.C. § 2510(17)(B).  Because Defendants temporarily store and transmit electronic communication and transmission of such communication, Delta Content is stored in electronic storage for purposes of the SCA.

68.    Defendants' customers specifically consent to information being shared with only certain entities.  Specifically as to Rule 25, Plaintiffs and Class Members only authorize transmission of such PII data to "[Delta's] own offices, other carriers, or the providers of such services."  Since the Delta Content is inaccessible to the general public, the information is considered private for purposes of the SCA.

69.    As set forth herein, Plaintiffs and Class Members did not authorize Defendants to share their PII and Delta Content with other unauthorized parties.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

70.    Plaintiffs and Class Members are subscribers or customers of Delta's remote computing service, pursuant to 18 U.S.C. § 2702(a)(2).  By virtue of Delta's conduct in providing the ability to send or receive wire or electronic communications, Delta is an electronic communication service within the meaning of the SCA.  Plaintiffs and Class Members are customers of Delta's electronic communication service, pursuant to 18 U.S.C. § 2510(13).

71.    Plaintiffs and Class Members are subscribers and persons aggrieved by violations of the SCA, pursuant to 18 U.S.C. §§ 2707(a) and 2510(11).

72.    By virtue of Defendants' conduct in providing computer storage and processing services by means of an electronic communications system, Delta is a remote computer service within the meaning of the SCA.

73.    Defendants providers of an electronic communication service to the public, pursuant to 18 U.S.C. §§ 2702(a)(1) and 2510(15).

74.    Defendants maintain a facility through which an electronic communication service is provided, pursuant to 18 U.S.C. § 2701(a).

75.    Defendants are providers of a remote computing service to the public, pursuant to 18 U.S.C. §§ 2702(a)(2) and 2711(2).

76.    Defendants are a person within the meaning of the SCA, pursuant to 18 U.S.C. § 2510(6).

77.    Defendants are a person or entity within the meaning of the SCA, pursuant to 18 U.S.C. § 2707(a).

78.    Plaintiffs' and Class Members' use of Defendants' booking systems and their transfers of content and information to Defendants constitute electronic communications, pursuant to 18 U.S.C. § 2501(12).

79.    Plaintiffs' and Class Members' electronic communications were in electronic storage, pursuant to 18 U.S.C. § 2501(17).

80.    Defendants violated the SCA by intentionally accessing without authorization or exceeding an authorization to access Delta's facility through which

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

an electronic communication service is provided, thereby obtaining access to Plaintiffs' and Class Members' electronic communications while they were in electronic storage, pursuant to 18 U.S.C. § 2701(a).

81. Defendants violated the SCA by knowingly divulging the contents, including content and information, of Plaintiffs' and Class Members' electronic communications while they were in electronic storage to unauthorized parties, pursuant to 18 U.S.C. § 2702(a)(1).

82. Defendants violated the SCA by knowingly divulging the contents, including content and information, of Plaintiffs' and Class Members' electronic communications that were carried or maintained on Delta's remote computing service to unauthorized parties, pursuant to 18 U.S.C. § 2702(a)(2).

83. As a result of Defendants' violations of the SCA, Plaintiffs and Class Members have suffered injury, including but not limited to the invasion of Plaintiffs' and Class Members' privacy rights, and have been placed at an imminent, immediate, and continuing risk of identity theft-related harm.

84. Defendants profited through their violations of the SCA, and Plaintiffs and Class Members suffered actual damages, as detailed herein, as a result of these violations, pursuant to 18 U.S.C. § 2707(c).

85. Plaintiffs and Class Members are entitled to actual damages, disgorgement of profits made by Defendants as a result of their violations of the SCA, and statutory damages, in an amount not less than $1,000 per Plaintiff or Class Member.

86. Plaintiffs and Class Members are also entitled to preliminary and other equitable or declaratory relief as may be appropriate, as well as reasonable attorneys' fees and litigation costs, pursuant to 18 U.S.C. § 2707(b).

87. Defendants' violations of the SCA were committed willfully and intentionally, and therefore Plaintiffs and Class Members also seek punitive damages pursuant to 18 U.S.C. § 2707(c).

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

## THIRD CLAIM FOR RELIEF

### Negligence

### (Against [24]7 on Behalf of the [24]7 California Class)

88.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 55 above, as if set forth fully herein.

89.    Upon accepting Plaintiffs' and Class Members' PII in their system, [24]7 undertook and owed a duty to Plaintiffs and Class Members to exercise reasonable care to secure and safeguard that information from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties, and to utilize commercially reasonable methods to do so.  This duty included, among other things, designing, maintaining, and testing [24]7 security systems to ensure that Plaintiffs' and Class Members' PII was adequately secured and protected.

90.    [24]7 further had a duty to implement processes that would detect a breach of its security system in a timely manner.

91.    [24]7 had a duty to Plaintiffs and Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' PII as required by California Civil Code §1798.81.5.

92.    [24]7 breached its duties to Plaintiffs and Class Members under California Civil Code §1798.81.5 by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII. "A business that . . . maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." California Civil Code §1798.81.5 (b) [emphasis added].

93.    Plaintiffs and Class Members are within the class of persons that California Civil §1798.81 is meant to protect. "It is the intent of the Legislature to ensure that personal information about California residents is protected." California

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

Civil Code §1798.81.5 (a)(1).

94.    [24]7's failure to comply with applicable laws and regulations constitutes negligence per se, which creates a presumption of negligence. *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 737 (2010).

95.    But for [24]7's negligence *per se*, Plaintiffs and Class Members would not have been harmed.

96.    The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of [24]7's negligence *per se*.

97.    [24]7 knew or should have known that its negligence *per se* would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the exposure of their PII.

98.    A "special relationship" exists between [24]7 and Plaintiffs and Class Members.  [24]7 entered into a "special relationship" with Plaintiffs and Class Members whose PII was collected - with every purchase - and received by [24]7. [24]7 entered into a "special relationship" with Plaintiffs and Class Members by placing their PII in their database.  Furthermore, [24]7 also created a "special relationship" with Plaintiffs and Class Members who provided their information to [24]7 and its affiliates, by playing a large role in creating and maintaining centralized computer systems and data security practices that were used for storage of all of [24]7's customers' PII.  Finally, [24]7 also created a "special relationship" with Plaintiffs and Class Members whose PII was placed in the [24]7 database due to their dealings with its affiliated companies.  Plaintiffs' and Class Members' PII was placed in [24]7's and/or its affiliates' database so that they tailor its efforts in "customer experience" software updates in order to understand "consumer intent." **Exhibit I**, [24]7.ai website ("We give companies the unparalleled ability to know and act on consumer intent in milliseconds. By applying the power of big data and machine learning, we've developed predictive models that have been tuned by more

than one billion annual interactions and have in depth knowledge of more than 70 consumer journeys across multiple verticals.").

99.    [24]7 had a duty to timely disclose to Plaintiffs and Class Members that their PII had been or was reasonably believed to have been compromised. Timely disclosure was appropriate so that, among other things, Plaintiffs and Class Members could take appropriate measures to avoid use of bank funds and monitor their account information and credit reports for fraudulent activity.

100.    [24]7 breached its duty to discover and to notify Plaintiffs and Class Members of the unauthorized access by failing to discover the security breach within reasonable time and by failing to notify Plaintiffs and Class Members of the breach in a timely manner.

101.    [24]7 also breached its duty to Plaintiffs and Class Members to adequately protect and safeguard this information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII.  Furthering its negligent practices, [24]7 failed to provide adequate supervision and oversight of the PII, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted a third party to access Plaintiffs' and Class Members' PII, misuse the PII, and intentionally disclose it to others without consent.

102.    Through [24]7's acts and omissions described in this Complaint, including [24]7's failure to provide adequate security and its failure to protect Plaintiffs' and Class Members' PII from being foreseeably captured, accessed, disseminated, stolen, and misused, [24]7 unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiffs' and Class Members' PII during the time it was within [24]7's control.

103.    Through [24]7's acts and omissions as described in this Complaint, including [24]7's failure to provide adequate security and its failure to protect Plaintiffs' and Class Members' PII from being foreseeably captured, accessed,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

disseminated, stolen, and misused, [24]7 unlawfully breached its duty to exercise reasonable care to adequately protect and secure Plaintiffs' and Class Members' PII during the time it was within [24]7's control.

104.   Further, through its failure to timely discover and provide clear notification of the data breach to consumers, [24]7 prevented Plaintiffs and Class Members from taking meaningful, proactive steps to secure their PII.

105.   Upon information and belief, [24]7 improperly and inadequately safeguarded the PII of Plaintiffs and Class Members and did so in a manner that deviated from standard industry rules, regulations, and practices at the time of the data breach.

106.   [24]7's failure to take proper security measures to protect Plaintiffs' and Class Members' sensitive PII, as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiffs' and Class Members' PII.

107.   [24]7's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to: failing to adequately protect the PII; failing to conduct adequate regular security audits; and failing to provide adequate and appropriate supervision of persons having access to Plaintiffs' and Class Members' PII.

108.   Neither Plaintiffs nor the other Class Members contributed to the data breach and subsequent misuse of their PII as described in this Complaint.

109.   [24]7 failed to prevent the data breach, which makes Plaintiffs' and Class Members' harm "fairly traceable" to the actions and/or inaction of [24]7 alleged herein.

110.   As a direct and proximate result [24]7's negligence, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing risk of identity theft-related harm and have suffered damages in an amount according to proof at trial but in excess of the minimum jurisdictional requirement of this Court.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

**FOURTH CLAIM FOR RELIEF**

**Violation of Cal. Civil Code §1798.81.5(b)**

**(Against [24]7 on Behalf of the [24]7 California Class)**

111.    Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 55 above, as if set forth fully herein.

112.    Cal. Civ. Code § 1798.81.5(b) requires that "A business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

113.    Plaintiffs and Class Members are "customer[s]" within the meaning of Cal. Civil Code §1798.80(c) and are California residents.

114.    Defendant is a "business" within the meaning of Cal. Civil Code §1798.80(a).

115.    Plaintiffs' and Class Members' PII constitutes "personal information" within the meaning of Cal. Civil Code §1798.80(e).

116.    [24]7 violated Cal. Civ. Code § 1798.81.5(b) by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure as evidenced by the fact that the security of Plaintiffs' and Class Members' PII was compromised and exposed to at least one unauthorized party and perhaps more in the [24]7 data breach.

117.    More specifically, [24]7 accepted Plaintiffs' and Class Members' PII without ensuring that it had in place a reasonable and adequate system of security procedures and practices to protect the PII of Plaintiffs and Class Members from being compromised and exposed to third parties.

118.    As a direct and proximate result of [24]7's violation of Cal. Civ. Code § 1798.81.5(b), Plaintiffs' and Class Members' PPI was compromised and exposed

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

29

in connection with the [24]7 data breach.

119.   As a result of the [24]7 data breach and the exposure of their PII to unauthorized third parties, Plaintiffs and Class Members have been placed at an imminent, immediate and continuing risk of identity theft-related harm and are thereby entitled to recover compensatory damages in an amount according to proof at trial pursuant to Cal. Civ. Code § 1798.84(b).

## FIFTH CLAIM FOR RELIEF

### Violation of Cal. Civil Code §1798.82

### (Against [24]7 on Behalf of the [24]7 California Class)

120.   Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 55 above, as if set forth fully herein.

121.   Cal. Civ. Code § 1798.82(a) requires that "A person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose a breach of the security of the system following discovery or notification of the breach in the security of the data to a resident of California (1) whose encrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person …"

122.   Cal. Civ. Code § 1798.82(a) further requires that the disclosure of a data breach be made "in the most expedient time possible and without unreasonable delay, consistent with the needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system."

123.   The [24]7 data breach constitutes a "breach of the security of the system" within the meaning of Cal. Civ. Code § 1798.82(g).

124.   [24]7 did not even acknowledge that the data breach had occurred and that it had resulted in the exposure of Plaintiffs' and Class Members' PII to an unauthorized party until approximately six months after the date on which it appears that the data breach was discovered.  Moreover, [24]7 still has yet to provide

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

appropriate notification to Plaintiffs and Class Members as required by Cal. Civ. Code § 1798.82.

125.  [24]7 violated Cal. Civ. Code § 1798.82 by failing to notify Plaintiffs and Class Members of the data breach in the most expedient time possible and without unreasonable delay and by failing to provide appropriate notification to Plaintiffs and Class Members as required by Cal. Civ. Code § 1798.82.

126.  Upon information and belief, no law enforcement agency instructed [24]7 that notification to Plaintiffs and Class Members would impede a criminal investigation.

127.  [24]7's unreasonable delay in providing appropriate notification to Plaintiffs and Class Members prevented Plaintiffs and Class Members from taking immediate, prophylactic steps to safeguard their PII and to mitigate any identity-theft related harm that Plaintiffs and Class Members may suffer as a result of the [24]7 data breach.

128.  As a direct and proximate result of [24]7's violation of Cal. Civ. Code § 1798.82, Plaintiffs and Class Members have been placed at an imminent, immediate and continuing risk of identity theft-related harm and are thereby entitled to recover compensatory damages in an amount according to proof at trial pursuant to Cal. Civ. Code § 1798.84 (b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for relief as follows:

### **On The First Claim For Relief**

For compensatory damages in an amount according to proof at trial.

### **On The Second Claim For Relief**

For actual damages in an amount according to proof at trial;

For disgorgement of profits made by Defendants as a result of their violations of the SCA;

SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No.: 2:18-cv-02876-MWF-E

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

For statutory damages, in an amount not less than $1,000 per Plaintiff or Class Member;

For punitive and exemplary damages; and

For reasonable attorneys' fees and litigation expenses.

### On The Third Claim For Relief

For compensatory damages, in an amount according to proof at trial;

### On The Fourth Claim For Relief

For compensatory damages in an amount according to proof at trial; and

For affirmative injunctive relief mandating that [24]7 implement and maintain reasonable security procedures and practices to protect Plaintiffs' and Class Members' PII from unauthorized access, destruction, use, modification, or disclosure.

### On The Fifth Claim For Relief

For compensatory damages in an amount according to proof at trial; and

For affirmative injunctive relief mandating that [24]7 provide appropriate notification of the [24]7 data breach to Plaintiffs and Class Members as required by Cal. Civ. Code § 1798.82.

### On All Claims For Relief

For costs of suit and litigation expenses; and

For such other and further relief as this Court may deem just and proper.

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

1

## <u>DEMAND FOR JURY TRIAL</u>

2

3

Plaintiffs, on behalf of themselves and the members of the Classes, hereby demand a jury trial for all claims so triable.

4

5

Dated: October 8, 2018                              Respectfully Submitted,

6

7

/s/ *Bobby Saadian*_____

8

Bobby Saadian

J. Paul Gignac

9

*Attorneys for Plaintiffs and Proposed Classes*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137