UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 18-2876-MWF (Ex) | Date: February 14, 2019 |
| Title: Dana Pica, et al. v. Delta Air Lines, Inc., et al. | |

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):** ORDER RE: MOTIONS TO DISMISS SECOND AMENDED COMPLAINT [41] [51]

Before the Court are two motions to dismiss Plaintiffs' Second Amended Complaint:

First, there is Defendant Delta Air Lines, Inc.'s ("Delta") Motion to Dismiss (the "Delta Motion"), filed on November 7, 2018. (Docket No. 41). Plaintiffs filed an Opposition on November 26, 2018. (Docket No. 42). Delta filed its Reply on December 28, 2018. (Docket No. 52).

Second, there is Defendant [24]7.AI, Inc.'s ("[24]7") Motion to Dismiss (the "[24]7 Motion"), filed on December 21, 2018. (Docket No. 51). Plaintiffs filed their Opposition on January 18, 2019. (Docket No. 54). [24]7 filed its Reply on January 28, 2019. (Docket No. 55).

The Court has reviewed and considered the papers submitted on the two motions and held a hearing on February 11, 2019. For the reasons discussed below, the two motions are ruled upon as follows:

- The Delta Motion is **GRANTED *without leave to amend***. The Airline Deregulation Act of 1978 preempts Plaintiffs' claim for breach of contract, which seeks to impose more obligations than Delta's own, self-imposed undertakings. Plaintiffs have also failed to adequately allege their claim for violation of the Stored Communications Act against Delta.

---

**CIVIL MINUTES—GENERAL**                                                              1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 18-2876-MWF (Ex) | Date: February 14, 2019 |
| Title: Dana Pica, et al. v. Delta Air Lines, Inc., et al. | |

- The [24]7 Motion is **GRANTED** *without leave to amend*. Plaintiffs have likewise failed to plead their claim for violation of the Stored Communications Act against [24]7 with sufficient particularity. In addition, Plaintiffs' remaining claims are preempted.

## I. BACKGROUND

The Court's Order on September 18, 2018 (the "September 18 Order"), granting in part and denying in part Delta's Motion to Dismiss First Amended Complaint, contained a detailed explanation of the relevant allegations. (Docket No. 35). The following section is substantially similar but has been updated to reflect relevant additional allegations and citations to the Second Amended Complaint ("SAC") as the operative complaint.

The SAC alleges as follows:

Plaintiffs Dana Pica and Gabrielle Groff are long-time customers of Delta. (SAC ¶¶ 5–7). Delta provides online travel reservation, air transportation, and related services to customers and local partners through its website and mobile applications. (*Id.* ¶ 8). [24]7 is a provider of voice and chat services related to sales and support for Delta. (*Id.* ¶ 9).

### A. The Data Breach

As long-time customers, Plaintiffs have given personal identifying information ("PII"), such as identity and debit and credit card information, to Delta and [24]7. (*Id.* ¶¶ 5–6). Plaintiffs note that PII, such as debit and credit card information, is extremely valuable and a "frequent target of hacker." (*Id.* ¶¶ 20–22).

On April 6, 2018, Delta sent a notice to all customers who had provided debit and credit card information to Delta notifying them that their PII "was hacked by malware and that any transactions made [from September 26, 2017 to October 12, 2017] may have been affected." (*Id.* ¶ 16). A few days later, on April 11, 2018, Delta

| | | |
|---|---|---|
| | **CIVIL MINUTES—GENERAL** | 2 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-2876-MWF (Ex)                    Date:  February 14, 2019
Title:     Dana Pica, et al. v. Delta Air Lines, Inc., et al.

reaffirmed that "a cyber security incident involving [24]7 . . . may have resulted in unauthorized access to [customers' PII]."  (*Id.* ¶ 17 (emphasis removed)).

According to Plaintiffs, the hack occurred because Defendants failed to maintain a sufficient and adequate system for data storage; establish appropriate administrative, technical, and physical safeguards to protect PII; and implement reasonable security procedures and practices to protect PII.  (*Id.* ¶¶ 23, 30–31).  Safer and more secure procedures and practices should have been in placed considering "well-publicized litigation and public announcements of data breaches."  (*Id.* ¶ 20).

The ramifications of Defendants' failure to keep PII secure are allegedly severe.  (*Id.* ¶ 24).  Plaintiffs may suffer pecuniary losses from identify theft and identity fraud related to their stolen PII.  (*Id.* ¶¶ 24–25).  Plaintiffs may expend significant time and/or costs to review and correct their personal and financial record, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and reviewing any potential unauthorized activity.  (*Id.* ¶¶ 26, 32–33).  Plaintiffs note that that they may even face years of constant surveillance of their financial and personal records.  (*Id.* ¶ 29).  Indeed, Plaintiffs have already purchased personal and credit monitoring services.  (*Id.* ¶¶ 5–6).

B.     **The Contract of Carriage**

As part of the reservation process with Delta, Plaintiffs allege that they enter into a contract with Delta.  For instance, when attempting to book a flight online with Delta, the "Book a Flight" screen states that "[t]icket purchase is subject to all terms in Delta's applicable Contract of Carriage."  (*Id.* ¶¶ 35–36).  Similarly, before completing their reservation, Plaintiffs are again reminded that they "agree to accept all Fare Rules for each flight, all Trip Extras Terms & Condition, and all terms in Delta's applicable Contract of Carriage."  (*Id.* ¶ 34).

The Contract of Carriage, in turn, contains numerous rules.  (*Id.* ¶ 38, Ex. H).  Relevant here is Rule 25, which describes PII and Delta's handling of PII as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-2876-MWF (Ex)**           **Date:  February 14, 2019**
**Title:**     Dana Pica, et al. v. Delta Air Lines, Inc., et al.

> The passenger recognizes that personal data has been given to carrier for the ***purposes of making a reservation***, obtaining ancillary services, facilitating immigration and entry requirements, and making available such data to government agencies. For these purposes, the passenger authorizes carrier to retain such data and to transmit it to its own offices, other carriers, or the providers of such services, in whatever country they may be located.

(*Id.* ¶¶ 40–41 (emphasis added)).

Plaintiffs allege that [24]7, as a provider of voice and chat services related to sales and support for Delta, is not included among the defined "provider of such services." (*Id.* ¶ 42). And by sharing customers' PII with [24]7 and exposing it to potential hackers, Delta has allegedly breached the Contract of Carriage. (*Id.* ¶ 43).

Plaintiffs bring this action on their own behalf; on behalf of "[a]ll person who are residents of the United States and who booked an airline ticket through Delta's website or mobile application at any time during the period commencing on September 26, 2017 and concluding on October 12, 2017" (the "Delta Nationwide Class"); on behalf of "[a]ll persons who are residents of the United States and who used the [24]7.AI electronic chat service platform at any time during the period commencing on September 26, 2017 and concluding on October 12, 2017 (the "[24]7 Nationwide Class"); on behalf of "[a]ll persons who are residents of the State of California and who booked an airline ticket through Delta's website or mobile application at any time during the period commencing on September 26, 2017 and concluding on October 12, 2017" (the "Delta California Class"); and on behalf of "[a]ll persons who are residents of the State of California and who used the [24]7.AI electronic chat service platform at any time during the period commencing on September 26, 2017 and concluding on October 12, 2017" (the "[24]7 California Class"). (*Id.* ¶ 48).

Plaintiffs assert five claims for relief: (1) breach of contract against Delta and on behalf of the Delta California Class; (2) violation of the Store Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*, against all Defendants and on behalf of the Delta

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 18-2876-MWF (Ex) | Date: February 14, 2019 |
| Title: Dana Pica, et al. v. Delta Air Lines, Inc., et al. | |

Nationwide Class and [24]7 Nationwide Class; (3) negligence against [24]7 and on behalf of the [24]7 California Class; and (4)–(5) violation of California Data Breach Act ("CDBA"), Cal. Civ. Code § 1798 *et seq.*, against [24]7 and on behalf of the [24]7 California Class. (*Id.* ¶¶ 56–128).

## II. THE DELTA MOTION

Through the Delta Motion, Delta argues that Plaintiffs' two claims against it—breach of contract and violation of the SCA—should be dismissed for numerous reasons. (Delta Mot. at 6–24). The Court will address, in turn, each claim.

### A. Breach of Contract

Delta first argues that Plaintiffs' breach of contract claim is preempted by the Airline Deregulation Act of 1978 (the "ADA"), 49 U.S.C. § 1301 *et seq.*, and to the extent the claim is not, Plaintiffs fail to plead plausible facts to support it. (Delta Mot. at 7–12).

#### 1. Overview of Relevant Preemption Law

The Constitution's Supremacy Clause provides that federal law is the "supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. State law is preempted "to the extent of any conflict with a federal statute," regardless of whether the conflict is express or implied. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Courts must "find preemption where it is impossible for a private party to comply with both state and federal law . . . , and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372–73 (internal quotation marks, citations, and alterations omitted).

Congress enacted the ADA in order to "encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 18-2876-MWF (Ex) | Date:  February 14, 2019 |
| Title:       Dana Pica, et al. v. Delta Air Lines, Inc., et al. | |

quantity, variety, and price of air services, and for other purposes." 49 U.S.C. § 1301. The ADA says that "no State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law *relating to* rates, routes, or services of any air carrier." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 238 (1995) (citing § 1305(a)(1)) (emphasis added).

The relevant leading cases on preemption in this area are *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), *Wolens*, and *Northwest, Inc. v. Ginsberg*, 572 U.S. 273 (2014).

In *Morales*, the Court took a broad view of the phrase "relating to". In that case, the National Association of Attorneys General (NAAG) adopted Air Travel Industry Enforcement Guidelines ("Guidelines"), containing the standards governing the content and format of airline advertising, the awarding of premiums to customers, and the payment of compensation to passengers who voluntarily yield their seats on overbooked flights. 504 U.S. at 379. The Guidelines did not purport to "create new laws or regulations" but to "explain in detail how existing state laws apply to air fare advertising and frequent flyer programs." *Id.* Several NAAG members then sent these Guidelines to several air carriers and warned that failure to comply with the Guidelines could result in liability under various states' consumer protection statutes. *Id.* at 378–79. The air carriers sued and argued that such state regulations were preempted by the ADA. *Id.* at 380. The Court agreed and concluded that the ADA—in "express[ing] a broad pre-emptive purpose"—preempts the Guidelines and prohibits NAAG members from enacting or enforcing law, regulation, rule, or standards having "*a connection with*" or "*reference to*" airline rates, routes, or services. *Id.* at 383–84 (emphasis added). Notably, the Court provided examples—guidelines against gambling and prostitution—that are "too tenuous, remote, or peripheral" to be preempted. *Id.* at 390.

In *Wolens*, the Court considered state law claims brought by members of an airline's frequent flyer program after a devaluation of accumulated miles for breach of contracts and violations of Illinois' Consumer Fraud and Deceptive Business Practices Act ("CFDBP" and an analogue of UCL). 513 U.S. at 224–25. The Court concluded that it "need not dwell on the question whether plaintiffs' complaints state claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-2876-MWF (Ex)                    Date:  February 14, 2019
Title:      Dana Pica, et al. v. Delta Air Lines, Inc., et al.

relating to [air carrier] rates, routes, or services," since plaintiffs' claims arise out of dissatisfaction with "*access to flights* and class-of-service upgrades unlimited by retrospectively applied capacity controls and blackout dates." *Id.* at 226 (emphasis added). These are unquestionably services provided by an airline. *Id.* Accordingly, the Court concluded that the ADA preempts plaintiffs' claims brought under the CFDBP. *Id.* The Court, however, concluded that the ADA does not preempt plaintiffs' breach of contract claims as those arise out of an airline's "own, self-imposed undertakings" unrelated to any state-imposed obligations. *Id.* at 228–29.

In *Northwest*, the Court considered another challenge to an airline's frequent flyer program. In that case, the plaintiff brought claims for breach of implied covenant of good faith and fair dealing, among other claims that were dismissed prior to the appeal. 572 U.S. at 278. The plaintiff argued, in particular, that his claims are different than those presented in *Wolens* and therefore not preempted, as his claims concerned only the frequent flyer program rather than any "services" provided (*e.g.*, access to flight and upgrades). *Id.* at 284. The Court disagreed, finding that the "proffered distinction has no substance" and that his claims had some connection with the airline's services. *Id.* 284–85. The Court also concluded that the plaintiff's breach of implied covenant claims arose out of state-imposed obligations rather voluntary, self-imposed undertakings, since the covenant applies to every contract under Minnesota law, the relevant jurisdiction. *Id.* at 287–88. Accordingly, the Court held that the ADA preempted plaintiff's claims for breach of implied covenant of good faith and fair dealing.

Together, *Morales*, *Wolens*, and *Northwest* hold that the broad scope of ADA preemption sweeps claims as wide-ranging as those related to state consumer protection statutes, frequent flyer programs, common law covenants, and advertising guidelines because they are all have a connection to the core part of the "services" that an airline provides.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-2876-MWF (Ex)                    Date:  February 14, 2019
Title:    Dana Pica, et al. v. Delta Air Lines, Inc., et al.

### 2. Preemption of Contract Claim

Delta argues that Plaintiffs are attempting to enforce more than the terms expressed in the Contract of Carriage, directly contravening *Wolens*' holding that a breach of contract claim survives preemption only to the extent they involve an airlines' "own, self-imposed undertakings." (Delta Mot. at 11 (citing 513 U.S. at 228–29)). Delta notes that the Contract of Carriage specifies that Plaintiffs' PII is used "for the purposes of making a reservation" and, for these purposes, Delta may transmit PII to "providers of such services," like [24]7. (*Id.*). Delta finally points out that, as noted by Plaintiffs, [24]7 is a provider of voice and chat services related to "sales and support" (*i.e.*, services that relate to making a reservation). (*Id.*; *see also* SAC ¶ 9).

In response, Plaintiffs argue that they "do not seek to enforce anything more than a simple breach of contract based only on Delta's self-imposed obligations." (Delta Opp. at 11). Plaintiffs also argue that if Delta had wanted to include [24]7 in the Contract of Carriage, Delta could have explicitly named it. (*Id.* at 12–13). This argument is unconvincing.

Delta properly transmitted PII to [24]7, its provider of sales and support services. Plaintiffs recognize as much by alleging, for instance, that "Delta entrusted [24]7 with its customers' PII without ensuring that [24]7 had in place a reasonable and adequate system of security procedures and practices to protect the PII of Plaintiffs and Class Members from being compromised and exposed to third party hackers." (*See* SAC ¶ 30). The crux of Plaintiffs' allegations, therefore, appears to be one based on [24]7's negligent handling of customers' PII or, more specifically, Delta's negligent failure to supervise [24]7's handling of PII. (Delta Mot. at 11).

But the Contract of Carriage contains no self-imposed promise from Delta as to *how* it will handle PII. Neither does it promise specific procedures of third-parties, like [24]7, that have access to PII. Delta's Privacy Policy, on which Plaintiffs previously based their breach of contract claim, affirms this understanding:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 18-2876-MWF (Ex)            **Date:**  February 14, 2019
**Title:**  Dana Pica, et al. v. Delta Air Lines, Inc., et al.

> This Privacy Policy describes our practices related to the use, storage and disclosure of information we collect from or about you in the course of providing commercial air travel services at Delta.com and through our Fly Delta App.  Delta reserves the right to modify this Privacy Policy at any time and without prior notice.  We will post any changes on delta.com so please check regularly for the most recent version of our Privacy Policy.  ***This Privacy Policy is not a contract and does not create any legal rights or obligations***.

(*See* Privacy Policy (Docket No. 27-1)).

The promise that Delta does make in the Contract of Carriage is that it would "retain such data [i.e., personal data has been given to Delta for the purposes of making a reservation] and to transmit it to its own offices, other carriers, or the providers of such services, in whatever country they may be located."  (SAC ¶ 38, Ex. H).  Thus, permitting Plaintiffs to read into the Contract of Carriage additional obligations would be a direct circumvention of the broad pre-emptive sweep of the ADA.  *See, e.g.*, *Alatortev v. JetBlue Airways, Inc.*, No. 17-cv-4859-WHO, 2018 WL 784434, at *6 (N.D. Cal. Feb. 7, 2018) ("Alatortev's breach of contract claim depends on an 'enlargement or enhancement' of the parties' agreement, and is therefore preempted by the ADA."); *Varga v. United Airlines*, No. 09-cv-2278-SI, 2009 WL 2246208, at *7 (N.D. Cal. July 24, 2009) ("The Court agrees with defendant that, notwithstanding plaintiff's allegations that defendant's employees were responsible for the theft of plaintiff's belongings, plaintiff's claims [including one for breach of contract] are preempted by the ADA.").

At the hearing, Plaintiffs insisted that they are not bringing a breach of contract claim related to how either [24]7 or Delta negligently handled (or allegedly mishandled) PII, but a claim related to Delta's improper transmission of PII to [24]7 in the first place.  The Court, however, is not persuaded by Plaintiffs' purported distinction for the following reasons:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-2876-MWF (Ex)           Date: February 14, 2019
Title:     Dana Pica, et al. v. Delta Air Lines, Inc., et al.

*First*, Plaintiffs' distinction appears to be inconsistent with thrust of the allegations in their Second Amended Complaint. For instance, Plaintiffs recognize that they are "customer[s] of Delta who gave [their] PII to [D]efendants [*i.e.*, Delta and [24]7] while making a Delta ticket purchase," and yet, any transmission of their PII to [24]7 is improper. (*See* SAC ¶¶ 5–6). As the Court noted above and at the hearing, this appears to be an argument related to whether PII should have been shared between Delta and [24]7 in the first place. Plaintiffs' allegations further support this inference, since Plaintiffs are bringing this action "for [D]efendants' [*i.e.*, Delta and [24]7's] ***reckless and negligent violation*** of customer privacy rights." (*See id.* ¶ 2). But, of course, such a claim would be preempted by the ADA.

*Second*, to the extent the inconsistent allegations are construed in Plaintiffs' favor, the Court still cannot conclude that Plaintiffs have adequately alleged their breach of contract claim. The Contract of Carriage permits Delta to transmit PII "to its own offices, other carriers, or the providers" of services related to making a reservation or obtaining ancillary services. (*See id.* ¶¶ 40–41). Plaintiffs' allegations, while recognizing that [24]7 is a provider of "voice and chat agent services ***for sales and support***," offer the unsupported conclusion that [24]7 is not a "provider[] of such services" as contemplated by the Contract of Carriage. (*See id.* ¶¶ 9, 42, 59 (emphasis added)). But these conclusory statements fall far short of what is required by *Twombly*, *Iqbal*, and relevant Ninth Circuit authority.

Accordingly, the Delta Motion is **GRANTED** *without leave to amend* as to Plaintiffs' breach of contract claim.

### B.     Violation of the SCA

Delta next argues that Plaintiffs' claim for a violation of §§ 2701, 2702 of the SCA also fails. (Delta Mot. 12–24). The Court will address, in turn, each section.

Section 2701 of the SCA "provides a cause of action against anyone who 'intentionally accesses ***without authorization*** a facility through which an electronic communication service is provided . . . and thereby obtains, alters, or prevents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-2876-MWF (Ex)  Date: February 14, 2019
Title: Dana Pica, et al. v. Delta Air Lines, Inc., et al.

authorized access to a wire or electronic communication while it is in electronic storage.'" *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072 (9th Cir. 2004) (quoting § 2701(a)(1)) (emphasis added). The Court is not convinced that Plaintiffs have adequately alleged a claim for violation of § 2701 under the SCA and concludes that the issue of "unauthorized access" is dispositive.

In connection with their claim, Plaintiffs allege that Delta "violated the SCA by intentionally accessing without authorization or exceeding an authorization to access Delta's facility [*i.e.*, servers and website] . . . ." (*See* SAC ¶ 80). But in the Delta Opposition, Plaintiffs curiously argues that they "did authorize Delta to access their PII" and, more confusing, points out that this authorization is for the purposes of making reservations. (*See* Delta Opp. at 18). Not only undermining their own allegations that Delta had no authorization to access Plaintiffs' PII, Plaintiffs' argument defies common sense.

The Court would have to accept the conclusion that Delta, in unlawfully accessing its own servers, did not have Delta's own authorization. But this conclusion would defy logic. *See, e.g.*, *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1272 (N.D. Cal. 2001) ("Crowley's second argument in support of his unauthorized access claim, which is that Amazon had limited access to its own systems, strains credulity."); *Penrose Comp. Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202, 211 (N.D.N.Y. 2010) ("Because section 2701 ***prohibits only unauthorized access*** and not the misappropriation or disclosure of information, there is no violation of section 2701 for a person with authorized access to the database.") (internal quotation marks omitted and emphasis added).

Section 2702 of the SCA prohibits a person or an entity providing either an "electronic communication service" or "remote computing service" to the public from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service." § 2702(a)(1)–(2). Here, the Court cannot conclude that Delta is an entity providing either an "electronic communication service" or "remote computing service."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-2876-MWF (Ex)                    Date:  February 14, 2019
Title:     Dana Pica, et al. v. Delta Air Lines, Inc., et al.

As to an "electronic communication service," Plaintiffs allege that because customers access Delta's website to send Delta information such as "name, payment card information, date of travel, and similar information," Delta is an entity providing electronic communication service.  (*See* SAC ¶ 66; Delta Opp. at 13–17).  But Plaintiffs' reading of "electronic communication service" is far too broad.  The Court is particularly persuaded by the reasoning of *In re JetBlue Airways Corporation Privacy Litigation*, a case involving JetBlue Airways' handling of PII.  379 F. Supp. 2d 299 (E.D.N.Y. 2005).  In rejecting the argument that JetBlue Airways is an "electronic communication service" as contemplated by the SCA, the district court noted the following:

> Although JetBlue operates a website that receives and transmits data to and from its customers, it is undisputed that it is ***not the provider of the electronic communication service*** that allows such data to be transmitted over the Internet.  Rather, JetBlue is more appropriately characterized as a provider of air travel services and a consumer of electronic communication services.  The website that it operates, like a telephone, enables the company to communicate with its customers in the regular course of business.  Mere operation of the website, however, does not transform JetBlue into a provider of internet access, just as the use of a telephone to accept telephone reservations does not transform the company into a provider of telephone service.  Thus, a company such as JetBlue does not become an "electronic communication service" provider simply because it maintains a website that allows for the transmission of electronic communications between itself and its customers.

*Id.* at 307 (emphasis added); *see also In re Nw. Airlines Privacy Litig.*, No. 04-cv-126-PAM, 2004 WL 1278459, at *2 (D. Minn. June 6, 2004) ("Defining electronic communications service to include online merchants or service providers like Northwest stretches the [SCA] too far.").

At the hearing, Plaintiffs pointed to *United States v. Mullins*, 992 F.2d 1472 (9th Cir. 1993), and argued that the Ninth Circuit has previously concluded that an airline

---

**CIVIL MINUTES—GENERAL**                                                                 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-2876-MWF (Ex)  Date:  February 14, 2019
Title:  Dana Pica, et al. v. Delta Air Lines, Inc., et al.

may be the provider of an electronic communication. But *Mullins* is easily distinguishable. The Ninth Circuit concluded that American Airlines was "a provider of wire or electronic communication service" under 18 U.S.C. § 2511(2)(a)(i), a statute that criminally prohibits the interception of wire and electronic communications, rather than the SCA. *See id.* at 1478. Moreover, the Ninth Circuit considered American Airlines' status as a provider of electronic communications only to the extent such status related to a challenge of an individual's Fourth Amendment violation. *Id.*

As to a "remote computing service," the Court is persuaded that, although Plaintiffs allege that Delta operates a website and computer servers, there are no facts alleged indicate that Delta "provides either computer processing services or computer storage to the public" under the plain meaning of the SCA. *Id.* at 310 (citing § 2711(2) ("[T]he term 'remote computing service' means the provision to the public of ***computer storage or processing services*** by means of an electronic communications system.") (emphasis added)).

In sum, the Court is not persuaded that Plaintiffs, in a very strained attempt, have adequately alleged a claim for violation of either § 2701 or § 2702 of the SCA.

Accordingly, the Delta Motion is **GRANTED** *without leave to amend* as to Plaintiffs' claim for violation of the SCA.

### III.  THE [24]7 MOTION

[24]7 argues that Plaintiffs' four claims—violation of the SCA, negligence, and two claims for violation of the CDBA—should be dismissed for numerous reasons. ([24]7 Mot. at 5–19).

#### A.  Violation of the SCA

[24]7 first argues that Plaintiffs' claim for a violation of §§ 2701, 2702 of the SCA also fails. ([24]7 Mot. 15–19; [24]7 Reply at 11–17).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 18-2876-MWF (Ex) | **Date:** February 14, 2019 |
| **Title:** Dana Pica, et al. v. Delta Air Lines, Inc., et al. | |

As to § 2701, the Court is not convinced that Plaintiffs have adequately alleged "unauthorized access." Citing to numerous allegations in their Second Amended Complaint, Plaintiffs argue that they have adequately alleged [24]7 "intentionally and without authorization accessed Delta's [servers and other locations where electronic information are stored]." ([24]7 Opp. at 10–12 (citing SAC ¶¶ 2, 4, 17, 41–43, 59). But even after drawing *reasonable* inferences in Plaintiffs' favor, this argument is not persuasive. Plaintiffs, in essence, are arguing that "Delta transmitted and/or shared the PII of Plaintiffs . . . with [24]7" and yet [24]7 had lacked authorization to the PII. (*See* SAC ¶ 60).

As to § 2702, the Court first notes that whether [24]7 is an entity providing either an "electronic communication service" or "remote computing service" is more difficult to resolve than whether Delta is one. Other courts have concluded that entities that offer email, pager, or social networking services, or offer the ability to send certain electronic communications (*e.g.*, chats) may be considered providers of "electronic communication service." *See, e.g.*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 977 (C.D. Cal. 2010) ("Although no court appears to have decided whether a social networking site or a web hosting service is an [electronic communication service] provider . . . , at least one district court entered judgment on a jury verdict in favor of the plaintiff in a civil suit alleging improper retrieval of information . . . .") (citation omitted)). Because [24]7 is alleged to be a provider of voice and chat services related to sales and support for Delta, it is not merely a user and may be characterized as an entity that "allows such data [*i.e.*, electronic communications] to be transmitted over the Internet." *See In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d at 307.

The Court, however, need not decide whether [24]7 is an "electronic communication service" or "remote computing service" because, regardless of whether it is, Plaintiffs have failed to adequately allege that [24]7 "knowingly divulge[d]" PII.

As far as the Court is aware, only one court in the Ninth Circuit has previously addressed the scope of the term "knowingly" within the meaning of § 2702. *See In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2017 WL 3727318, at *42 (N.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 18-2876-MWF (Ex)          **Date:** February 14, 2019
**Title:** Dana Pica, et al. v. Delta Air Lines, Inc., et al.

---

Cal. Aug. 30, 2017) (concluding that "[b]ased on the allegations in the [complaint], Plaintiffs have not plausibly alleged that Defendants' 'knowingly divulge[d]' Plaintiffs' PII in the Data Breaches"). The district court noted that "reckless" or "negligent" conduct is insufficient to constitute "knowing" disclosure of a communication under the SCA, and that plaintiffs cannot state a claim under § 2702 simply because a defendant failed to prevent a data breach. *Id.*; *see, e.g.*, *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 703 (N.D. Ill. 2012) ("[T]the failure to take reasonable steps to safeguard data does not, without more, amount to divulging that data knowingly."); *Willingham v. Glob. Payments, Inc.*, No. 12-cv-1157-RWS, 2013 WL 440702, at *12 (N.D. Ga. Feb. 5, 2013) (concluding that, even where defendant "created or contributed to the breach of its data system," such conduct did not constitute "knowingly divulg[ing]" information within the meaning of the SCA); *Long v. Insight Commc'ns of Cent. Ohio, LLC*, 804 F.3d 791, 795–96 (6th Cir. 2015) (concluding that Time Warner Cable's mistaken disclosure of an IP address was not a violation of the SCA because "negligently or recklessly failing to ensure the accuracy of the information that [Time Warner Cable] disclosed" did not constitute Time Warner Cable "knowingly divulg[ing] this information" within the meaning of the SCA).

As noted above, Plaintiffs allege that the data breach occurred because [24]7 failed to maintain a sufficient and adequate system for data storage; establish appropriate administrative, technical, and physical safeguards to protect PII; and implement reasonable security procedures and practices to protect PII. (*see id.* ¶¶ 23, 30–31). Moreover, Plaintiffs expressly note that safer and more secure procedures and practices should have been in placed considering "well-publicized litigation and public announcements of data breaches." (*Id.* ¶ 20). These allegations are insufficient to show that [24]7 divulged Plaintiffs' PII and did so with a knowing state of mind within the meaning of § 2702.

Accordingly, the [24]7 Motion is **GRANTED *without leave to amend*** as to Plaintiffs' claim for violation of the SCA.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-2876-MWF (Ex)          Date:  February 14, 2019
Title:  Dana Pica, et al. v. Delta Air Lines, Inc., et al.

### B. Negligence and Violation of the CDBA

[24]7 next argues that Plaintiffs' claims for negligence and violation of the CDBA are preempted by the ADA. ([24]7 Mot. at 5–7).

As a preliminary matter, Plaintiffs' claims for negligence and violation of the CDBA would be preempted by the ADA if brought against Delta. *See, e.g.*, *A.C.L. Computers and Software, Inc. v. Fed. Express Corp.*, No. 15-cv-4202, 2016 WL 946127, at *2–3 (N.D. Cal. Mar. 14, 2016) (concluding that negligence standard of care derives from state common law and "requires the airline to offer services significantly different than what the market might dictate"); *Wolens*, 513 U.S. at 227–28 (noting that state laws, like consumer protection statutes, are preempted where they "serve[] as a means to guide and police [*i.e.*, prescriptive]" the services related to airlines and "not simply give effect to bargains offered by the airlines and accepted by airline customers"). The dispute is instead over whether ADA preemption extends to the claims against [24]7 as an agent of Delta.

Plaintiffs argue that [24]7 offers a "generic chat service that is used in the same way and manner by many different types of companies" that are not airlines. (*See* [24]7 Opp. at 3). According to Plaintiffs, the fact that the exact same service being offered to other companies that are not airlines "is clear evidence that the underlying service provided is not related to the . . . service of an air carrier." (*Id.* at 3–4 (emphasis omitted)). Plaintiffs finally appear to suggest that in order for the claims to be preempted, [24]7's services must only be provided to airlines. (*See id.* at 4–5).

The Court disagrees with Plaintiff's argument on service for the following reasons:

*First*, Plaintiffs cite to no authority—nor can the Court locate any—suggesting that ADA preemption applies to agents of airlines only where those agents provided services *exclusively* to airlines. In fact, many other courts have concluded just the opposite. *See, e.g.*, *In re American Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 556 (N.D. Tex. 2005) (dismissing state-law claims against a defendant as preempted by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 18-2876-MWF (Ex) | Date: February 14, 2019 |
| Title: Dana Pica, et al. v. Delta Air Lines, Inc., et al. | |

the ADA where, like here, "American owns and operates an Internet website—http://www.aa.com—that enables customers to purchase tickets for air transportation . . . [the defendant] plays a role in maintaining the website").

*Second*, it would be inconsistent with the sweeping preemptive effect of the ADA to base preemption on which entity is providing services as opposed to the services provided.  In other words, it is irrelevant that [24]7 offers services to Delta and numerous other companies.  Plaintiffs' claims are still preempted to the extent the services offered by [24]7 relate to Delta's "rates, routes, or services."  *See Wolens*, 513 U.S. at 238 (citing § 1305(a)(1)).  Since [24]7 provides voice and chat services related to "sales and support" for Delta, the Court has little trouble concluding that [24]7's services relate to Delta's "rates, routes, or services."  (*See* SAC ¶ 9).

*Finally*, the Court is particularly persuaded by the reasoning in *Gordon v. Amadeus IT Group, S.A.*, 194 F. Supp. 3d 236 (S.D.N.Y. 2016).  In that case, the plaintiffs brought a putative class action on behalf of consumers who purchased airline tickets from nine major air carriers during the previous ten years. *Id.* at 239.  The plaintiffs alleged that through "a group of global distribution systems through which airlines provide fare and schedule information to travel agents," the airlines conspired to restrain competition in violation of various state antitrust, consumer protection laws, and other laws. *Id.*  In opposing dismissal, the plaintiffs argued "at some length that the instant case is readily distinguishable from *Morales* and its progeny, noting in particular that [p]laintiffs have brought claims not against airlines themselves, but rather against third-party [global distribution systems]." *Id.* at 244.

In rejecting the plaintiffs' argument and concluding that their claims were preempted, the *Gordon* court noted the following:

> In light of the Supreme Court's broad interpretation of the ADA's "relating to" language, however, this distinction does not remove Plaintiffs' claims from the scope of ADA preemption.  To predicate the ADA's preemptive effect on the identity of the defendant would permit states to make an end-run around Congress' intended deregulation of

**CIVIL MINUTES—GENERAL**                                                                  17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-2876-MWF (Ex)         Date: February 14, 2019
Title:     Dana Pica, et al. v. Delta Air Lines, Inc., et al.

>  airlines. It cannot be that while the ADA prohibits, for example, state guidelines on airline fare advertising to be enforced against airlines, it permits enforcement of the very same guidelines—dictating what airfares can be presented, and the means and manner in which airline advertisements are displayed—against advertising agencies. This narrow reading of the statute's "related to" language is akin to the limiting interpretation rejected by the Morales Court when it held that, to give full expression to Congress' statutory intent, ***ADA preemption may be applied even when the prohibited effect is "indirect."***

*Id.* (emphasis added).

Accordingly, the [24]7 Motion is **GRANTED** *without leave to amend* as to Plaintiffs' claim for negligence and violation of the CDBA.

## IV. CONCLUSION

The issues addressed here are the same as were addressed previously. In the prior Order, the Court warned Plaintiffs that any future successful motion to dismiss would be granted without leave to amend. The Delta Motion and the [24]7 Motion are therefore **GRANTED** *without leave to amend*. The action is **DISMISSED**.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. The Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment. Local Rule 58-6.

IT IS SO ORDERED.